**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

STEPHANIE LYNN FORD,                )
                                    )
        Plaintiff,                   )
                                    )        Consolidated
        v.                           )        Civil Action Nos.
                                    )        06-301-***; 06-458-***
CHRISTIANA CARE HEALTH               )
SYSTEMS, RICHARD BURTON,             )        **FILED UNDER SEAL**
and CLARA CLARK,                     )
                                    )
        Defendants.                  )

---

**APPENDIX OF EXHIBITS TO**
**DEFENDANTS' BRIEF IN SUPPORT OF THEIR**
**MOTION FOR SUMMARY JUDGMENT AND**
**IN OPPOSITION TO PLAINTIFF'S CASE DISPOSITIVE MOTION**
**FILED UNDER SEAL**

---

David H. Williams (DE 616)
James H. McMackin, III (DE 4284)
MORRIS JAMES LLP
500 Delaware Avenue, 15th Floor
P.O. Box 2306
Wilmington, DE  19899
302.888.6900.5849
dwilliams@morrisjames.com
jmcmackin@morrisjames.com

Michael J. Ossip (admitted pro hac vice)
Thomas S. Bloom (admitted pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
215.963.5543

Counsel for Defendant Christiana Care
Health Systems

Dated:  February 13, 2007

## TABLE OF CONTENTS

| PAGE NO. | DESCRIPTION |
|---|---|
| A-1 | Plaintiff's Physician Note dated November 10, 2003 |
| A-3 | Request for Leave of Absence dated November 11, 2003 |
| A-7 | Employee Relations Practices Policy |
| A-9 | Policy D-1 – Leaves of Absence |
| A-17 | Letter to Plaintiff from Christiana Care dated January 26, 2004 |
| A-18 | Letter to Plaintiff from Christiana Care dated April 19, 2004 |
| A-19 | Email re: Plaintiff's Termination Form dated April 23, 2004 |
| A-20 | Delaware Department of Labor Letter dated June 27, 2006 |
| A-21 | EEOC Letter dated November 28, 2006 |
| A-23 | Pension Information Form dated November 14, 2006 |
| A-24 | Excerpts of Deposition Transcript of Stephanie Ford dated December 13, 2006 |



ıss M. Ufberg, M.D.
*edical Director*

# Wilmington
## Pain & Rehabilitation
## Center

Physical Medicine & Rehabilitation
Electromyography
Sports Medicine

REDACTED

Wilmington Pain & Rehabilitation Center, P.A.
302 • 575 • 1776
1021 Gilpin Avenue • Suite 101 • Wilmington, DE • 19806 • 3263
FAX 302 • 575 • 1780

A-1

RU041
CONFIDENTIAL

REDACTED

A-2

RU042
CONFIDENTIAL

## CHRISTIANA CARE HEALTH SERVICES
## REQUEST FOR LEAVE OF ABSENCE

Date  11/13/03

Name/SS#  Stephanie L. Ford  REDACTED

Address  19 Albany Ave

New Castle De 19720

Telephone (302) 658-6740

Last day worked:

Paid Leave Start:

Unpaid Leave Start:

Projected Return:

Dept/Cost Center:

I request leave:  ✓ Medical  _____ Personal

_____ for the birth or adoption of a child or for the placement of a child for foster care.

_____ to care for an immediate family member (circle one: spouse, child or parent) with one of the following serious health conditions (certificate required):

✓ because I am unable to work due to one of the following serious health conditions (certificate required):

_____ period of incapacity or treatment connected with inpatient care in a hospital, hospice or residential medical care facility.

✓ period of incapacity requiring absence of more than three (3) calendar days from work, school or other regular daily activities or any subsequent treatment/period of incapacity that also involves either continuing treatment by (or under the supervision of) a healthcare provider or treatment two or more times.

_____ any period of incapacity due to pregnancy or for prenatal care.

_____ any period of treatment for incapacity due to a chronic serious healthcare condition.

_____ any period of incapacity which is permanent or long term due to a condition for which treatment may not be effective and for which I am under continuing supervision of a healthcare provider.

_____ any period of absence to receive multiple treatments by a healthcare provider for surgery after an accident or injury or for a condition that

A-3

EXHIBIT

Ford #1

GAP 12/13/06

PENGAD 800-631-6989

B00054

A "Serious Health Condition" means an illness, injury, impairment, or physical or mental condition that involves one of the following:

1.   Hospital Care

Inpatient care (i.e., an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of incapacity or subsequent treatment in connection with or consequent to such inpatient care.

2.   Absence Plus Treatment

(a)   A period of incapacity of more than three consecutive calendar days (including any subsequent treatment or period of incapacity relating to the same condition), that also involves:

(1)   Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

(2)   Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

3.   Pregnancy

Any period of incapacity due to pregnancy, or for prenatal care

4.   Chronic Conditions Requiring Treatments

A chronic condition which:

(1)   Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

(2)   Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(3)   May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.)

A-4

5.    Permanent/Long-Term Conditions Requiring Supervision

A period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective. The employee or family member must be under the continuing supervision of, but need not be receiving active treatment by, a health care provider. Examples include Alzheimer's, a severe stroke, or the terminal stages of a disease.

6.    Multiple Treatments (Non-Chronic Conditions)

Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on the referral by, a health care provider, either for restorative surgery after an accident or other injury, or for a condition that would likely result in a period of incapacity of more than three consecutive calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), kidney disease (dialysis).

A-5

P00056

I understand that when my requested leave of absence is for birth or placement for adoption or foster care, it must conclude within 12 months of the birth or placement. Also, use of intermittent leave in such cases is subject to my employer's approval.

I understand that the following terms apply to my FMLA leave of absence:

- I have the option to use accrued paid leave and disability leave for my illness and paid leave only for personal leave.

- My employer will continue to maintain my group health insurance coverage if such coverage was provided before.

- Upon my return I will be restored to my original job or to an equivalent job with equivalent pay, benefits and other employment terms and conditions provided I do not exceed 12 weeks leave in a 12 month period measured backward from the current leave. I will not be entitled to any more rights, benefits, or employment beyond that to which I would have been entitled had I not taken FMLA leave.

- If I am a "key" employee, my employer may refuse to reinstate me upon my return, according to the specified and limited circumstances provided in FMLA of 1993.

I understand that I must request a leave of absence as far in advance as reasonably and practically possible. I must give 30 days notice of my need to use FMLA leave when the need is foreseeable. I understand that I will be required to provide medical certification to support my need for leave due to a serious health condition affecting me or an immediate family member. I also understand that my employer may require second and third medical opinions and period recertifications and I may be required to provide periodic reports during FMLA leave regarding my status and intent to return to work.

I understand that if FMLA leave is needed to care for my immediate family member or for my own illness, and it is for planned medical treatment, I must schedule treatment so that it will not unduly disrupt my employer's operation.


_____                                 _____
Employee's Signature                                       Date


_____                                 _____
Employer's Approval                                        Date


A-6

# Employee Relations Practices

### Attendance:

An employee must be cleared by EHS prior to returning to work following an injury or illness requiring absences of 5 days, any hospitalization (regardless of length of stay), or an absence of any duration for a problem that may affect ability to perform required work duties. (Policy F-1)

The attendance standard is based on the number of <u>actual</u> shifts worked each pay period within the current rolling 12-month period. As a result, an average must be calculated for those employees that routinely work more than their budgeted number of hours, or have changed their status within the rolling 12-month period. (Calculated using the attendance matrix. Example for absence: EE works 7 tours for 4 months = 2 occurrences, then changes status and works 5 tours for remaining 8 months = 2 occurrences. The prorated standard for this 12-month period is 4 occurrences of absence. The EE should be educated on their pro-rated standard and that the standard for working 5 tours within a 12-month period is 3 occurrences of absence.

When employees are required to make an appearance in Court for purposes other than Jury Duty, They may be granted PTO if notice allows, or the <u>Manager should facilitate</u> a schedule switch to allow the employee to have that day off without taking PTO or jeopardizing staffing. In cases where prior notice is not given (in relation to the notice the ee received), the manager may review for either an emergency day or occurrence.

When an employee fails to either arrive for or call out for a scheduled shift (no call / no show) a 2nd step reminder may result. If this occurs for 2 consecutive days, a DML may be considered.

** LB on 8/20 - Inpatient Hospitalization and Outpatient Surgery <u>will be</u> removed from the "excused absence" list on policy A-12

### LOA:

A-7

At the point that an employee is absent from work for 14 days (two weeks), they must either return to work or be placed on a FMLA qualifying Leave of Absence. This leave would be effective retroactive to the first day absent from work. If the ee has not been employed for 6 months, they would be removed from payroll and coded as "ineligible for LOA".

When returning from a LOA, an employee can work a reduced work schedule (even if FMLA time is exhausted) for 2 pay periods without changing their status to Part-time. This is restricted to one time within a 12-month period. If the employee has FMLA time available and the department can accommodate a reduced schedule, the employee may work reduced hours until FMLA time is exhausted.

A 30-day "Personal Leave" is available in cases where an employee's FMLA is exhausted and they are in need of additional LOA time for a covered family member. This LOA can also be utilized in cases where the family member is not covered under FMLA (ie. grand-parents, siblings, etc.). This LOA is not protected under FMLA and should not be counted towards their entitlement. The leave should be requested in writing to the Manager, who has the discretion to approve based on past practice and department needs. The employee may choose to be unpaid or use their paid leave account. The manager should not place the employee on a LOA using the Inet form since this is not a FMLA LOA and therefore doesn't require a letter from HR.

How to calculate remaining FMLA for an employee who wants to reduce or increase their hours. Ex. EE works 65 hrs per pp and has already used 285 hrs of intermittent FMLA. The ee wants to reduce hrs to 40 pp. Convert 285 back into weeks (8 wks, 4 days), which leaves 3 weeks and 1 day left to use as a 40 hour ee.

## Payroll / Payment Practices

When returning from a Medical LOA, where disability time was used, that employee can continue to use disability time if returning on a reduced schedule. If the employee returns full duty and at t later date needs intermittent time, disability time cannot be utilized.

A-8

Policy D-1 - Leaves of Absence

Print this Policy

# Policy D-1 - Leaves of Absence

**DATE EFFECTIVE:** February 16, 2004
**Revisions:** 09/25/01; 08/01/99; 12/29/97; 08/05/93; 11/25/91

## I.  POLICY STATEMENT

Christiana Care recognizes that employees may occasionally need to request a leave of absence for family and/or medical reasons. This policy outlines Christiana Care's Leave of Absence policy and complies with the Family and Medical Leave Action (FMLA). Approved leaves protect an employee's continuity of service and provide a job guarantee when an employee returns to work within the specified time frames and is capable of performing the essential functions of the position.

## II.  SCOPE

This policy applies to Christiana Care Health Services, Health Plans, Health Initiatives and Home Health and Community Services.

## III.  DEFINITIONS

### A.  Family Medical Leave Act

Family Medical Leave is defined as the period(s) of absence during a rolling 12-month period measured backward from the current date. Family Medical Leave may be taken on a continuous or an intermittent basis. Family Medical Leave may be granted for one of the following reasons:

1. The birth of a child or placement of a child with the employee for adoption or foster care. The leave must be taken within one year of birth or placement.
2. The care of an employee's spouse (including a common law spouse), child (including a child who is over 18 and incapable of self-care due to a physical or mental disability), or parent with a serious health condition.
3. Serious health condition that renders the employee unable to perform their job functions.

### B.  Serious Health Condition

D0003

A serious health condition is defined as an injury, impairment, physical or mental condition involving the following:

1. Period of incapacity or treatment in connection with or consequent to inpatient care in a hospital, hospice or residential care facility.
2. Period in incapacity requiring absence from work, school or other regular daily activities or more than 3 days that involves continuing treatment by (or under the supervison of) a health care provider, or
3. Continuing treatment by (or under the supervision of) a health care provider

A-9

Policy D-1 - Leaves of Absence

for prenatal care or a chronic or long-term condition that is incurable or so serious that, if not treated, would result in a period of incapacity of more than 3 days.

C.  Continued Treatment

Continuing treatment means that the individual is treated two or more times by (or under the supervision of or referral by) a health care provider or is treated on at least one occasion which results in a regimen of continuing treatment under the supervision of a health care provider.

D.  Reduced Schedule or Intermittent Leave

Employees may be permitted to take an FMLA in several blocks of time rather than in one continuous period of time, or to work under a reduced work schedule by reducing the number of hours they work per week or day.  Intermittent and reduced schedule leaves should be monitored and employees should be informed that time taken in this manner will be counted towards their twelve week entitlement under the FMLA.

IV.  **ELIGIBILITY FOR FAMILY/MEDICAL LEAVE**

A.  **Continuous Leave of Absence**

Full time and part time employees who complete six months or more of continuous service may be granted a family/medical leave under Christiana Care policy.

All other classification of employees must be employed for at least 12 months and must have worked at least 1250 hours during the 12 month period preceding the date the leave is required in accordance with the requirements of the FMLA.  Information concerning other types of leaves are outlined in policies D-2 (Military Leave) and E-5 (Worker's Compensation).  In additional to 12 weeks Family/Medical leave, Christiana Care provides and additional 12 weeks of leave for an employee's own serious health condition.  Re-employment is not guaranteed during this additional 12 week period.

B.  **Intermittent Leave of Absence**

Full time and part time employees who complete six months or more of continuous service may be granted intermittent family/medical leave under Christiana Care policy.

All other classification of employees must be employed for at least 12 months and must have worked at least 1250 hours during the 12 month period preceding the date the leave is required in accordance with the requirements of the FMLA.

V.  **REQUESTS FOR LEAVE**

Requests for or notices of Family/Medical Leave must be given by the employee or, if the employee is unable to give notice, by the employee's representative.  The employee (or the employee's representative) must provide an explanation for the leave that allows Christiana Care to determine if the leave qualifies as a Family/Medical Leave.

When the need for Family/Medical Leave is foreseeable, the employee must provide at

D0004

A-10

Policy D-1 - Leaves of Absence

least 30 days advance notice. If it is not possible to provide 30 days notice, the employee must provide as much advance notice of the anticipated timing and duration of the leave as is practical.

Once the need for Family/Medical Leave is known or in cases where the need is not foreseeable, the employee must provide notice of the anticipated leave within 1 or 2 business days of the date that the employee identifies the need for leave, except where extraordinary circumstances apply.

If notice is not provided in 1-2 business days, the employee can not provide a reasonable excuse for the delay, and the notice requirements have not been waived, the Family/Medical Leave may be delayed until at least 30 days following the date notice was provided to the employee.

## VI.   CERTIFICATION OF A SERIOUS HEALTH CONDITION

Family/Medical Leave due to a serious health condition of a family member or the employee must be supported, at the written request of Christiana Care, by a certification issued by the health care provider of the individual with the condition. In the event the certification is inadequate, the employee will be given a reasonable opportunity to cure any deficiency.

Christiana Care will request certification at the time, or soon after, the leave is requested. The certification must be provided within 15 days of Christiana Care's request or such longer period as may be required in particular circumstances.

Christiana Care may require a second medical opinion. In the event of a conflicting opinion, Christiana Care may require a third and final opinion, from a doctor selected jointly by the employee and Christiana Care. Second and third opinions will be paid for by Christiana Care.

Additional subsequent certifications may be requested by Christiana Care, verbally, on a reasonable basis.

Family/Medical Leave will not be authorized until the certification is provided, although leave may be approved on a contingent basis, pending the submission of medical certification.

## VII.   ADMINISTERING LEAVES OF ABSENCE

Christiana Care will designate all approved leaves, whether paid or unpaid as Family/Medical Leave. If Christiana Care does not have sufficient information to designate paid leave as Family/Medical Leave, it may request additional information from the employee. The designation will generally be made before the leave starts, or before an extension of the leave is granted, unless Christiana Care does not have sufficient information as to the reason for the leave.

### A.   Job Guarantee

Employees who have been granted a leave of absence under the provisions of the FMLA will be guaranteed their position or an equivalent position provided their total

D0005

A-11

Policy D-1 - Leaves of Absence

leave time does not exceed twelve (12) weeks during the last twelve month rolling period, measured backward from the current leave. This is the maximum entitlement under the FMLA. The employee must also be physically capable of performing the essential functions of the position (with or without reasonable accommodations). Medical leave can be granted for a period up to twenty four weeks in a twelve month rolling period, measured backward from the current FMLA leave, but the employee is not entitled to a job guarantee in the last twelve weeks of such leave. In those cases, the Employment section of Human Resources will assist employees in applying for suitable, available positions within Christiana Care.

**B.    Coordination with Accrued Paid Leave Time**

For an employee's own serious health condition, the employee may use accrued disability leave and/or paid leave time or go into unpaid status if paid leave and disability leave time are not available. For the care of an immediate family member, the employee may use accrued paid leave or be in an unpaid status if paid leave is not available.

**C.    Benefit Coverage**

1. Full time employees will be covered in the basic benefits program at not cost. Full time employees who participated in a higher leave of coverage prior to leave status may continue that coverage as long as they pay the difference between basic coverage and higher coverage. Employees who participated in a lower level of coverage must continue that level of coverage in accordance with the terms of that coverage.
2. Part-time employees may continue current coverage by paying the cost of their coverage on the same basis as if actively employed.
3. WIP employees can continue current coverage on the same basis as if actively employed.
4. Leave time is considered as credited service for pension calculation purposes.
5. Disability leave and paid leave hours will only accrue when an employee is in an active pa status.

**D.    Effect of Leave on Job Bidding**

An employee in leave status is not permitted to apply for open positions. If an employee is cleared to returned from a leave after twelve weeks, their position is no longer available, and does not wish to accept a position offered, the employee may apply for other available position at Christiana Care but there is no guarantee that the employee will be placed into that position.

Employees with medical limitations who can not return to their former positions due to limitation, will be permitted to bid on positions for which they are qualified and able to perform the essential functions of the position, with out without reasonable accommodations.

Once the maximum leave time has expired and an employee has not secured a new position, the employee will be removed from payroll.

**E.    Effect of Leave on Merit Increases**

A-12

D0006

Policy D-1 - Leaves of Absence

Employees on a leave of absence at the time of the common review date will receive their review upon return to active status. Such employees will be eligible for their merit increase effective the beginning of the pay period in which they return.

## VIII. RETURN TO WORK

### 1. Twelve or less weeks of leave

An employee on leave for less than twelve weeks during a twelve month rolling period will be reinstated to their department and job or an equivalent job. The employee must also be physically capable of performing the essential functions of the position with or without reasonable accommodations. All employees returning to work must be cleared for duty by Employee Health Services.

### 2. Great than 12 weeks of leave

There is no job guarantee for leaves of absences that exceed 12 weeks in rolling twelve-month calendar. The Employment section of the Human Resources department will meet with an employee returning from a leave of absence greater than twelve weeks, and will provide assistance in identifying and interviewing for positions that match their skills. Placement and selection will be based on availability of positions and qualifications. A similar process will occur with employees able to return to work but unable to perform the essential functions of the position held prior to leave with or without reasonable accommodations. In the latter case, Employee Health Services will consult with Human Resources to discuss work limitations and capabilities.

### 3. 24 weeks leave

Employees unable to return after 24 weeks leave in a rolling 12 month calendar, the maximum allowable time for leaves, will be terminated from payroll. When the employee is able to return to work, he/she can re-apply through the Employment section of Human Resources. Service credit rights described in Policy A-3 shall apply.

## IX. PERSONAL FAMILY/MEDICAL LEAVES

Family/Medical leaves of absence of up to thirty days may also be requested by eligible employees to care for other family members not covered under the FMLA.

Employees granted a personal FMLA will be provided a 12 week job guarantee as long as they have not exceed 12 weeks of leave in a rolling 12 month period.

## X. REDUCED SCHEDULE OR INTERMITTENT LEAVE

D0007

Employees must make a reasonable effort to schedule any intermittent or reduced leave so as not to unduly disrupt Christiana Care's operations.

Christiana Care reserves the right to temporarily transfer an employee taking intermittent or reduced leave to an alternate position, with equivalent pay and benefits, if the alternate position is better able to accommodate recurring periods of absence.

A-13

If an employee takes Family/Medical Leave on an intermittent or reduced schedule, only

Policy D-1 - Leaves of Absence

the amount of leave taken will be counted toward the 12 weeks of leave. If an employee normally works part time, the amount of leave used will be calculated on a pro rata or proportional basis. If an employee's work schedule varies, the employee's normal pre-leave workweek will be determined by taking the average number of hours worked over the 12 weeks preceding the leave.

## XI. RESTRICTIONS ON MARRIED EMPLOYEES

A husband and wife who are both employed by Christiana Care may take a combined total of 12 weeks for a Family/Medical Leave in order to care for a newly arrived child or a sick parent. This restriction applies even if the spouses are employed at different work sites or locations. If Family/Medical Leave is requested because of the illness of a child or of the other spouse, however, each employee is entitled to 12 weeks of leave.

## XII. RESPONSIBILITIES

### A. Employer

Christiana Care will post, and keep posted, the notice set forth in Appendix A describing an employee's rights with respect to a Family/Medical Leave. The notice will be posted in a conspicuous location where it can be readily seen by employees and applicants for employment.

The following information will also be provided, in writing, to an employee upon a request for a Family/Medical Leave:

1. Notice that the leave will be counted against an employee's Family/Medical Leave entitlement;

2. Requirements for medical certification of a serious health condition and the consequences for failing to provide a certification;

3. The employee's right to use accrued paid leave;

4. Premium payment requirements for benefits and the method for making premium payments;

5. Fitness for duty requirement for re-employment;

6. Rights for re-employment;

7. Employee's potential liability for health coverage premiums paid by Christiana Care during the leave if they employee fails to work; and

8. Any additional entitlements and obligations.

### B. Employee Responsibility

A-14

An employee may request a leave of absence for family/medical reasons by completing the Request for Leave of Absence form and submitting a completed Certification of Healthcare Provider. These forms are available through he employee's department head

Policy D-1 - Leaves of Absence

Page 7 of 8

or an Employee Relations Representative. The employee should submit the completed forms to the department head to secure approval.

Employees on medical leave must also submit medical documentation on a monthly or periodic basis to an Employee Relations Assistant. Employees should contact the Benefits section of the Human Resources department to discuss the effect of a leave on their benefit status.

*Appendix A* _____

*Employee Rights under the Family and Medical Leave Act (FMLA) of 1993*

FMLA requires covered employers provide up to 12 weeks of unpaid, job-protected leave to "eligible" employees for certain family and medical reasons. Under the FMLA, employees are eligible if they have worked for a covered employer for at least one year, and for 1,250 hours over the previous 12 months, and if there are at least 50 employees within 75 miles.

## Reasons for Taking Leave

Unpaid leave must be granted for any of the following reasons:

- to care for an employee's child after birth, or placement for adoption or foster care;

- to care for an employee's spouse, son or daughter, or parent, who has a serious health condition; or

- for a serious health condition that makes an employee unable to perform their job.

At the employee's or employer's option, certain kinds of paid leave may be substituted for unpaid leave.

## Advance Notice and Medical Certification

Employees may be required to provide advance notice of a leave and medical certification. Leaves of absence may be denied if requirement are not met.

- Employees must ordinarily provide 30 days advance notice when the leave is "foreseeable".

- An employer may require medical certification to support a request for leave because of a serious health condition, and may require second or third opinions (at the employer's expense) and a fitness for duty report to return to work

## Job Benefits and Protection

A-15

- For the duration of FMLA leave, the employer must maintain the employee's health coverage under any "group health plan".

D0009

Policy D-1 - Leaves of Absence

- Upon return from FMLA leave, most employees must be restored to their original or equivalent positions with equivalent pay, benefits, and other employment terms.

- The use of FMLA leave cannot result in the loss of any employment benefit that accrued prior to the started of an employee's leave.

## Unlawful Acts by Employers

FMLA makes it unlawful for any employer to:

- interfere with, restrain, or deny the exercise of any right provided under FMLA.

- discharge or discriminate against any person for opposing any practice made unlawful by FMLA or for involvement in any proceeding under or relating to FMLA.

## Enforcement

- The U.S. Department of Labor is authorized to investigate and resolve complaints against violations.

- An eligible employee may bring a civil action against an employer for violations.

FMLA does not affect any Federal or State law prohibiting discrimination or supersede any State or local law or collective bargaining agreement which provides greater family or medical leave rights.

For Additional Information contact the nearest office of the Wage and Hour Division, listed in most telephone directories under U.S. Government, Department of Labor.

A-16

D0010



**CHRISTIANA CARE**
HEALTH SERVICES

4755 Ogletown-Stanton Road
PO Box 6001
Newark, Delaware 19718-6001

302-733-1000

January 26, 2004

Stephanie Ford
19 Albany Ave.
New Castle, DE 19720

Dear Stephanie:

I was unable to reach you by phone. I wanted to write to you concerning our leave of absence policy. The Christiana Care's leave of absence policy provides that you would be eligible for reinstatement to your department in a job of similar nature if you return to work within twelve weeks from the effective date of your leave. The policy also provides that if you're medical leave extends beyond twelve weeks; your position can be filled. After twelve weeks, however, you should maintain contact with me on a monthly basis to determine your ability to work and the availability of positions within Christiana Care. If you are cleared to return to work prior to the conclusion of your second 12 weeks, you are no longer eligible for a leave of absence. Therefore, if you are not able to return by April 13, 2004, it will be necessary to remove you from payroll. However, I am available to assist you in obtaining placement and answering questions that may come up during this period. You can reach me at (302) 733-1120.

If you are covered by Christiana Care's long term disability plan (LTD), please contact the Benefits Section. Any questions regarding this plan can be directed to Debra Lewis in the Benefits section at 428-5764.

If you have any questions or concerns, please don't hesitate to call me. I sincerely hope that you will be able to return to work soon. Again, please stay in contact with my office at least every thirty days.

Sincerely,

Anthanita Warner
Employee Relations Assistant

A-17



EXHIBIT
Ford -2

P00051



**CHRISTIANA CARE**
HEALTH SERVICES

4755 Ogletown-Stanton Road
PO Box 6001
Newark, Delaware 19718-6001

302-733-1000

April 19, 2004

Stephanie Ford
19 Albany Ave.
New Castle, DE 19720

Dear Stephanie:

As a follow-up to our telephone conversation this morning, I am writing to you concerning your current leave of absences. Christiana Care's leave of absence policy provides a twenty-four week maximum for leave of absence in a 12 month period for medical reasons. You have reached this twenty-four week limit as of **04/13/04**, therefore it will be necessary to remove you from Christiana Care's payroll effective this date.

If you are covered under Christiana care's long term disability plan, you should contact Debra Lewis at 428-5764 so that paperwork can be forwarded to you to apply for this benefit. Your removal from payroll will have no effect on any benefit you may qualify for under the disability plan. Following your termination from payroll, you will receive a notice which outlines your right to convert life insurance and to continue health and dental coverage and the rate you will be required to pay to maintain coverage. If you have any questions about benefit coverage, please contact Benefits at 428-5794.

If you receive clearance in the near future to return to work, you are welcome to re-apply for a position through the Employment Section of the Human Resources department. The Employment Section will attempt to place you based upon your qualifications in light of available vacancies. If it is possible to place you in a position at a later date, you may be entitled to have prior full time service restored. To discuss this, please contact me at 733-1120.

On behalf of Christiana Care, I would like to thank you for your years for service to Christiana Care Health Services. We are sorry that you are not able to continue work at this time.

Please do not hesitate to contact me with any additional questions.

Sincerely,

Anthanita Warner
Employee Relations Assistant

EXHIBIT
Ford 5
CP 10/13/06
PENGAD 800-631-6989

A-18

D0196

**Paul, Elaine**

|  |  |
|---|---|
| From: | FWZBXQ0@christianacare.org |
| Sent: | Friday, April 23, 2004 2:06 PM |
| To: | FormHRCCHSHRPemp@christianacare.org |
| Cc: | FWZBXQ0@christianacare.org; vfleiner@christianacare.org |
| Subject: | FORD, STEPHANIE - TERMINATION FORM |

*1987*

The following information was submitted from an INet Form called
TERMINATION FORM by Green-Crews, Edith.

```
Employment Assignment:
 *Employee Name:         - FormHRCCHSHRPemp@christianacare.org
 *Employee SSN#:         - FORD, STEPHANIE
 *Cost Center:           -        REDACTED
 *Last Day Worked:       - 26541
 *Term Effective Date:   - 10/27/03
 *Eligible for Unused PTO Hrs: - 04/13/04
 *Would You ReEmploy:    - Yes
 Voluntary Reason Code:  - Yes
 Involuntary Reason Code: - 100 Unable to Return from Medcial LOA
 Comments:               - None
                         - EMPLOYEE HAS EXHAUSTED HER 24 WK LEAVE P
                           ERIOD.


 *Approval:              - PEITLOCK, SHARON
 Date Completed:         - 4/23/2004
 Completed By:           - Green-Crews, Edith
----------------------------------------------------------------
Date Sent: 4/23/04
Time Sent: 2:06:05 PM
```

A-19

D0195

1



STATE OF DELAWARE
DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS
4425 NORTH MARKET STREET
WILMINGTON, DELAWARE 19802

TELEPHONE (302) 761-8200
FAX (302) 761-6601

*Winner, Delaware Quality Award of Merit*

June 27, 2006

Kendra L. Baisinger
1701 Market St.
Philadelphia Pa 19103

**RE:    Stephanie L. Ford SS# 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 v. Christiana Care Health Systems
Case File No. No Record Found**

Dear Kendra L. Baisinger    :

After a complete search of our files, we did not locate any record concerning the above captioned
individual.  If you need any further information concerning this matter, please contact our office
at 761-8200.

Very Truly Yours,

*Donna S. Forrest*

Donna S. Forrest
Office Manager
Office of Worker's Compensation

DSF/ema

**A-20**

w://WC_Forms/No Record Found



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**
**Legal Unit**

21 South 5th Street, Suite 400
Philadelphia, PA 19106-2515
(215) 440-2828
TTY (215) 440-2610
FAX (215) 440-2848

November 28, 2006

Thomas H. Ito
Morgan Lewis & Bockus LLP
1701 Market Street
Philadelphia PA 19103-2921

In Response Refer To: Foia No. A7-02-FOIA-0148
Ford v. Christiana Care Health Systems et al
EEOC Charge Nos. Unknown
Legal Id No. 53020070167

Dear Mr. Ito:

This letter is in response to your request under the Freedom of Information Act ("FOIA").

(X)    In your FOIA request, you requested the following:

A copy of the above-captioned case.

( )    Your request is ( ) denied in part; or ( ) denied in whole. Those records not released were withheld based on the FOIA subsections checked below. An attachment to this letter identifies each exemption involved, how the exemption applies and identifies the records withheld under each exemption. The applicable sections of the FOIA exempting disclosure are 5 U.S.C. Section 552(b):

( )(2)      ( )(5)    ( )(7A)
( )(3)      ( )(6)    ( )(7C)
( )(4)              ( )(7D)

(X)    Your request is neither granted nor denied. A review of cases in our system did not disclose this file in our inventory..

A-21

Please contact Fredricka B. Warren, Legal Technician at (215) 440-2828 for any additional information regarding your Freedom of Information Act ("FOIA") request.

You may appeal the denial or partial denial of your request by writing within thirty (30) days of receipt of this letter to:

> Assistant Legal Counsel/FOIA Programs
> Office of Legal Counsel
> U.S. Equal Employment Opportunity Commission
> 1801 L Street, N.W.
> Washington, D.C. 20507

You must include a copy of the Regional Attorney's determination with your appeal. Your appeal will be governed by 29 C.F.R. §1601.11.

Sincerely,

Jacqueline H. McNair
Regional Attorney

Page 2

A-22

### *PENSION INFORMATION*

DATE NOVEMBER 14, 2006

NAME OF PENSIONER: STEPHANIE FORD

SOCIAL SECURITY NO: REDACTED

DATE OF BIRTH: REDACTED  POSITION: CLERK III

DEPARTMENT/DIVISION: X-RAY – WILMINGTON

EMPLOYMENT DATE: 08/24/1987

SEVERANCE FROM SERVICE DATE: 04/13/2004

RETIREMENT DATE: 03/01/2027

TYPE OF RETIREMENT: TERMINATED VESTED

DATE PAYMENTS COMMENCE: 03/01/2027

PARTICIPATION DATE:

CREDITED SERVICE: 07 MOS 24 DAYS PT
15 YRS 11 MOS 25 DAYS FT (.16267)

FINAL AVERAGE EARNINGS (Monthly) $2127.14

SETTLEMENT OPTION:

ANNUAL AMOUNT: $4671.24

MONTHLY INCOME: $389.27

AGE AT TERMINATION: REDACTED

NRD: 03/01/2027

A-23

D0197

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STEPHANIE LYNN FORD,                )
                                    )
              Plaintiff,            )   CONSOLIDATED
                                    )   Civil Action
v.                                  )   Nos. 06-301-KAJ
                                    )       06-458-KAJ
CHRISTIANA CARE HEALTH              )
SYSTEMS, RICHARD BURTON, and        )
CLARA CLARK,                        )
                                    )
              Defendants.           )

          Deposition of STEPHANIE LYNN FORD taken
pursuant to notice at the law offices of Morris James,
LLP, 500 Delaware Avenue, Wilmington, Delaware, beginning
at 10:25 a.m., on Wednesday, December 13, 2006, before
Eleanor J. Schwandt, Registered Merit Reporter and Notary
Public.

APPEARANCES:
          KENDRA L. BAISINGER, ESQ.
          MORGAN, LEWIS & BOCKIUS, LLP
            1701 Market Street
            Philadelphia, Pennsylvania  19103
            for the Defendants

ALSO PRESENT:

          CHARLES HAMILTON

                    WILCOX & FETZER
          1330 King Street - Wilmington, Delaware 19801
                      (302) 655-0477
                      www.wilfet.com

A-24



**WILCOX & FETZER LTD.**
Registered Professional Reporters



Stephanie Lynn Ford

7

1    company, First State Security Company, worked there ten

2    years prior to coming to Christiana Care.

3        Q.    Okay.

4        A.    And I worked there for 17 years.

5        Q.    When did you graduate from high school?

6        A.    Well, I went to night school.

7        Q.    Okay.

8        A.    And I think it was in 2002.

9        Q.    Okay.  Are you going to night school now with the

10   community college?

11       A.    No, I go in the daytime.

12       Q.    Okay.  Have you ever filed a charge with any

13   state or federal agency which alleges that you were the

14   victim of illegal discrimination?  And that's not a

15   court, that's an agency.

16       A.    No.

17       Q.    Besides this action have you ever filed a lawsuit

18   against any other employer which alleges that you were

19   the victim of illegal discrimination?

20       A.    No.

21       Q.    And just one thing, you should wait until I

22   finish asking the question.

23       A.    Okay.

24       Q.    I know you can probably anticipate what I'm going

Stephanie Lynn Ford

17

1    Q.    The Employee Health Department did?

2    A.    Mm-hmm, yes.

3    Q.    Okay.  Did you try to return to work at all

4 before April 13th?

5    A.    I was unable to, Miss Baisinger.

6    Q.    Okay.  So you returned or attempted to return on

7 April 13th, 2004.  Can you walk me through what happened

8 on that day when you came back?

9    A.    When I came back?

10    Q.    Mm-hmm.

11    A.    Okay.  I think I got cleared from the doctor, and

12 then I called this lady, Mrs. Warner, we spoke on the

13 phone, and I told her I would be cleared to come back to

14 work.

15    Q.    When did you speak with her?

16    A.    I think we spoke that week.

17    Q.    Before you came in that day?

18    A.    Mm-hmm, before I came in.  That's how she was

19 able to set me up with an appointment with Mr. Burton.

20    Q.    So Ms. Warner set you up with Mr. Burton; is that

21 right?

22    A.    Yes.  Because when I left from Employee Health,

23 the person, this office, it is in the same building that

24 the Employee Health is in.  It is right, just -- the

  
Stephanie Lynn Ford

18

1   Employee Health is in the basement, and the Human

2   Resources is upstairs.

3           When I came from the Employee Health, the

4   appointment was already set for me.

5       Q.   Okay.

6       A.   The receptionist, I told her my name and she

7   instructed me I had an appointment with Mr. Burton and to

8   call him to set it up, and that's what I did.

9       Q.   Okay.

10      A.   When I called him, he could not give me an

11  appointment that day.  It was like I think about two or

12  three days later.  Because he had other appointments set

13  up, and that's when he could see me, so I waited until

14  that time.

15      Q.   Okay.  So you said you had called Ms. Warner a

16  few days before you returned?

17      A.   Mm-hmm.  And she told me my time -- she said,

18  "Your time, you have reached your time, and you have to

19  come back to work or, if not, they were going to take you

20  off the payroll."

21          So I told her, I said, "Look, I don't need

22  to lose my job.  I've been there for 17 years, you know."

23  And that's when she said, "Go to set it up with Mr.

24  Burton," to get with him to get a job.



WILCOX & FETZER LTD.
Registered Professional Reporters

A-27

Stephanie Lynn Ford

19

1     Q.   At that time did she tell you that your

2 previously held position was filled?

3     A.   No.  He told me, he told me that.  He told me

4 that.

5     Q.   Okay.  And was that the first time you met with

6 him?

7     A.   Yes.

8     Q.   At the first meeting?

9     A.   Mm-hmm, because --

10     Q.   Go ahead.  I'm sorry.

11     A.   I don't mean to cut you off.  I just wanted to

12 add this, just to have it on the record as well, I called

13 my supervisor prior to coming back to work, and they

14 would not respond to me, Mrs. Pietlock or Mrs. Crews.

15 They would not respond to my phone calls.

16     Q.   When did you call them; do you remember?

17     A.   Weeks, mm-hmm, yes.

18     Q.   When?

19     A.   Like a couple weeks before my time was up to come

20 back to work.

21     Q.   Okay.

22     A.   And they wouldn't respond to my phone calls.

23     Q.   You left messages?

24     A.   Yes, on her voice mail.



Stephanie Lynn Ford

29

1   7:00 shift.

2           So I applied for it.  And I even called Mrs.

3   Clark, Clara Clark, and asked her if I can come back to

4   my old job.  And I told her I was out sick and I wanted

5   to get a job and I wanted to work.  And she said to apply

6   for the job.

7       Q.   Okay.

8       A.   You know, that's the way I feel, personally I

9   feel it was wrong, you know.

10      Q.   We are going to move on a little bit.

11      A.   I'm sorry.

12      Q.   That's okay.  That's okay.

13           MS. BAISINGER:  We'll mark that as Ford 5,

14  please.

15           (Ford Deposition Exhibit 5 was marked for

16  identification.)

17  BY MS. BAISINGER:

18      Q.   This is a letter from Christiana Care, from

19  Anthony did he Warner, dated April 19th to you.  Do you

20  recognize this letter?  You can read it over.

21      A.   Yes, it is the same thing.  It has the 4/13 date,

22  yes, mm-hmm.

23      Q.   It references that you had a telephone

24  conversation with her that morning?

Stephanie Lynn Ford

33

1    Q.   Now, how many times did you meet with Mr. Burton?

2    A.   I met with him a couple times, a few times.  He

3    played tag, phone tag for quite a bit, you know.

4            Then I went over there a day, you know, and

5    that's the day I called Mrs. Clark, the very first day I

6    met with him, when our appointment was.

7    Q.   And was that after the 13th?  You said you

8    weren't able to meet with him on the 13th, so that would

9    have been after?

10   A.   Yes, after.  Yes, we met.

11   Q.   He directed you to the website --

12   A.   Right.

13   Q.   -- to show you what positions were available; is

14   that correct?

15   A.   Yes.

16   Q.   Did you ever have any interviews for any

17   positions that you applied for at Christiana Care?

18   A.   Well, yes, I did.  I did have interviews, but I

19   didn't get any jobs.

20           MS. BAISINGER:  Okay.  We'll mark that as

21   Ford 6, please.

22           (Ford Deposition Exhibit 6 was marked for

23   identification.)

24

Stephanie Lynn Ford

38

1    Q.    Why do you feel you were discriminated against?

2    A.    Because there has been so many people go out

3    sick, normal people, I mean, people I've seen there have

4    cancer go out sick, come back to work, get their jobs.

5              I mean, you know, and I feel as though I was

6    a good employee there.  I worked there 17 years, you

7    know.  I feel as though that when I came back to work I

8    should have gotten a job.  He had jobs available and

9    there were jobs.

10             You know, I'm not saying it is Christiana

11   Care itself.  It is the people that was in charge.

12   Because they want you to work there.  They want good

13   people to work there.  And I was one of those good

14   people.  And I'm not bragging.

15   Q.    Okay.

16   A.    I'm serious.  I was a good worker there.

17   Q.    You have filed a claim under the disabilities act

18   on your complaint?

19   A.    Yes.

20   Q.    What is the basis for your claim that Christiana

21   Care discriminated against you based on a disability?

22   A.    Well, yes, that, and they terminated my pension,

23   which was wrong.  You know, that was wrong.  There was no

24   point in doing that.  I mean, they canceled all my



Stephanie Lynn Ford

43

1    Q.    I just wanted to make sure.  You also have claims
2    asserted against Richard Burton and Clara Clark.  How do
3    you believe that they violated the law?  I know we have
4    sort of talked a little bit about it, but if you could
5    tell me what your feelings are on that.
6    A.    Well, I just think I should have -- I think they
7    should have given me a job.
8    Q.    What do you think Mr. Burton, specifically, what
9    do you think he should have done differently in advising
10   you?
11   A.    Well, I think he should have followed Christiana
12   Care's policy, and I didn't think he did do that.
13   Q.    How do you think he didn't do that?
14   A.    Well, normally when people go out sick, they
15   assign, the Human Resources Department assign employees
16   to him, and the other job recruiters, just like him, now,
17   and his job is to find people jobs -- not -- I don't want
18   to say find them a job, but help them and place them in a
19   job.
20        Because he has the jobs, Mrs. Baisinger.  He
21   has the open positions, I mean, you know, and that's his
22   job.  I mean, he is setting there with the jobs, and when
23   you are cleared to come back to work, because you can't
24   come back to work unless they clear you, unless their

**W&F**
WILCOX & FETZER LTD.
Registered Professional Reporters

A-32

Stephanie Lynn Ford

44

1    nurses clear you and they calls him, they let him know

2    you are cleared to come back to work.

3        Q.    Now, you aren't saying that he actually hired

4    people for the positions; is that correct?

5        A.    No, I don't want to say he hires you for the

6    position, but he has open positions.  And I think his --

7    that's the purpose of them placing you, giving him, you

8    know, giving his name to you from Employee Health.

9        Q.    Do you just mean that he has a list of the open

10   positions?

11       A.    Yes, he has the list.

12       Q.    He knows what is available?

13       A.    He knows the jobs, for clerks, he is assigned to

14   clerk jobs.  And the different job recruiters, they are

15   assigned to whatever job you are in.  They will place you

16   with that job recruiter specifically, you know, because

17   he knows what you are capable of doing from your

18   information.

19            I mean, I wouldn't qualify for a clerk VI

20   job because it is requirements that you have to have.

21   But a clerk III job I should have been able to get.

22       Q.    Okay.

23       A.    And they were available.

24       Q.    Did he ever say anything to you that you felt was

Stephanie Lynn Ford

45

1  discriminatory?

2      A.   Well, I don't want to say that.  It is just that

3  his actions.

4      Q.   What actions?

5      A.   Well, by not giving me a job, and just that --

6  and also with finding a job at another company when I

7  called him.

8      Q.   What do you mean by that?

9      A.   Do you want me to repeat it, Mrs. Baisinger?

10     Q.   Well, you said finding a job at another company.

11     A.   When I called him, I called him numerous times.

12     Q.   Okay.

13     A.   You know, because he said to call him every week,

14  because that's when they put the new jobs up, the new

15  postings.  And I called him every week, because I was out

16  of work and wanted to work.

17           What else am I supposed to do?  I worked

18  there 17 years.  What else am I supposed to do?  They

19  assign me to this job recruiter.  He is giving me the

20  run-around.  What else am I supposed to do?  I calls him

21  and that's what he told me.

22     Q.   He told you to --

23     A.   Just to find a job at another corporation because

24  there wasn't any jobs there for me to work.



WILCOX & FETZER LTD.
Registered Professional Reporters

A-34

Stephanie Lynn Ford

46

1    Q.   You have also brought claims against Clara Clark.

2   How do you believe that she discriminated against you?

3    A.   Well, because, Mrs. Baisinger, I worked in that

4   department for nine years.  Very same job that I left

5   from to go to the x-ray department, I couldn't even get

6   that job.  And that was the job I left.  I wasn't

7   qualified to do my job that I did for nine years.  Now,

8   what is wrong with that picture?

9    Q.   Did she say anything to you that you believe was

10  discriminatory?

11   A.   Well, she told me to apply for the job, which I

12  did, you know, and I applied with Mr. Burton, because he

13  is a clerk, you know.

14        And, I mean, what reason, why I wouldn't be

15  able to get the job and it is available?  Because the

16  girl that was in the job, they canned her because she

17  didn't want to come to work.

18        Now, if I did the job for nine years and it

19  is available, when I came back to work, why wouldn't I

20  apply for it, if it is available and I need a job?

21   Q.   Okay.  All right.  We are going to talk a little

22  bit about your claim for damages, the damages you've

23  asked for.  I believe that you've asked for a hundred

24  thousand dollars in damages.  That was the claim on your

**W&F**
WILCOX & FETZER LTD.
Registered Professional Reporters

A-35

Stephanie Lynn Ford

49

1   medical and dental benefits?

2       A.    I don't know.  I would like to find that out from

3   you.  That's what I'm really anticipating on finding out.

4       Q.    And I believe in your responses to the

5   interrogatories you said that you were without medical

6   and dental benefits from April --

7       A.    Yes.

8       Q.    -- 2004 through October 2004.  Is that in October

9   2004, did you start working somewhere else again

10  full-time?

11      A.    Yes, they did give me a job.

12      Q.    Where?

13      A.    It was for the State of Delaware.

14      Q.    State of Delaware?

15      A.    In Smyrna.

16      Q.    Where?

17      A.    In Smyrna, Delaware.

18      Q.    What were you doing there?

19      A.    I worked in the kitchen there.

20      Q.    And that was a full-time position?

21      A.    Yes.

22      Q.    You received full benefits?

23      A.    Mm-hmm, yes.

24      Q.    And while you were at Christiana Care you also

Stephanie Lynn Ford

50

1    had a long-term disability plan, correct?  And that was

2    the UNUM plan; is that correct?

3        A.    Yes, yes.

4        Q.    UNUM denied your application for long-term

5    disability benefits; is that right?

6        A.    Yes.

7        Q.    Christiana Care did not have anything to do with

8    that; is that right?

9        A.    Yes.

10       Q.    Okay.  And then you also had a life insurance

11   policy?

12       A.    Yes.

13       Q.    Is that right?  Do you have a life insurance

14   policy right now?

15       A.    Yes.

16       Q.    And did you ever convert your life insurance

17   policy from Christiana Care to an individual policy?  I

18   believe you can convert a group policy to an individual

19   policy after your employment is terminated.  Did you ever

20   look into doing that?

21       A.    From Christiana Care?

22       Q.    Yes.

23       A.    No, because I was anticipating getting a job,

24   Mrs. Baisinger.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

STEPHANIE LYNN FORD,                          :
                                              :
                    Plaintiff,                :
                                              :         CONSOLIDATED
             v.                               :         C.A. No. 06-301-***
                                              :         C.A. No. 06-458-***
CHRISTIANA CARE HEALTH SYSTEMS, INC., :
RICHARD BURTON, and CLARA CLARK,              :
                                              :
                    Defendants.               :

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on February 13, 2007, I electronically filed the attached **APPENDIX OF EXHIBITS TO DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S CASE DISPOSITIVE MOTION** with the Clerk of Court using CM/ECF, and that I have mailed by United States Postal Service the document to the following non-registered participant:

Stephanie Lynn Ford
19 Albany Avenue
New Castle, DE 19720

David H. Williams (#616)
dwilliams@morrisjames.com
James H. McMackin, III (#4284)
jmcmackin@morrisjames.com
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6900/5849

Michael J. Ossip (admitted *pro hac vice*)
Thomas S. Bloom (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
(215) 963-5761/5543

Dated:  February 13, 2007        Attorneys for Defendants