```
 1                IN THE UNITED STATES DISTRICT COURT
                  IN AND FOR THE DISTRICT OF DELAWARE
 2
                                 - - -
 3    STEPHANIE LYNN FORD,
                                      :   CIVIL ACTION
 4             Plaintiff,              :
                                       :
 5         v                           :
                                       :
 6    CHRISTIANA CARE HEALTH SYSTEMS,  :
      MR. RICHARD BURTON, and          :
 7    MRS. CLARA CLARK,                :
                                       :   NO. 06-301 (***)
 8             Defendants.
                                 - - -
 9
                           Wilmington, Delaware
10                 Friday, March 9, 2007 at 9:02 a.m.
                           TELEPHONE CONFERENCE
11
                                 - - -
12
      BEFORE:   HONORABLE **MARY PAT THYNGE**, U.S. MAGISTRATE JUDGE
13
                                 - - -
14    APPEARANCES:

15
                  STEPHANIE LYNN FORD
16
                       Pro Se Plaintiff
17

18            MORRIS JAMES, LLP
              BY:  JAMES H. McMACKIN, III, ESQ.
19
                       and
20
              MORGAN LEWIS & BOCKIUS
21            BY:  THOMAS S. BLOOM, ESQ.
                   (Philadelphia, Pennsylvania)
22
                       Counsel for Defendants
23

24
                                      Brian P. Gaffigan
25                                    Registered Merit Reporter
```

```
 1                          - oOo -
 2                       P R O C E E D I N G S
 3              (REPORTER'S NOTE:  The following telephone
 4  conference was held in chambers, beginning at 9:02 a.m.)
 5              THE COURT:  Good morning, this is Judge Thynge.
 6              MS. FORD:  Good morning, Your Honor.
 7              MR. BLOOM:  Good morning.
 8              THE COURT:  And I have who on the line, please?
 9              MS. FORD:  Stephanie Ford.
10              MR. BLOOM:  And Tom Bloom from Morgan Lewis and
11  Jim McMackin from Morris James for Christiana Care.
12              MR. McMACKIN:  Good morning, Your Honor.
13              THE COURT:  Good morning.  The purpose of this
14  call, counsel, and Ms. Ford was because I wanted to explain
15  to you what is happening with the vacant judgeship.  As you
16  know, Judge Jordan was elevated to the Third Circuit.  All
17  of his cases and all the new cases he would have received
18  are going into the vacant judgeship and I am essentially
19  base-tending those cases.
20              I know that we had a mediation in this case, I
21  believe, or a case that was similar to that because I
22  remember meeting you, Ms. Ford, and I think your father was
23  there for the mediation.
24              MS. FORD:  No, Your Honor. That wasn't my I
25  father.  My father passed on.  That was my uncle.
```

```
 1                 THE COURT:  Your uncle, I apologize.
 2                 MS. FORD:  That's all right.
 3                 THE COURT:  In cases in which the parties have
 4   not consented to my jurisdiction, I have been trying to keep
 5   in Judge Jordan's scheduling order to the extent there is
 6   any scheduling order left.  What will happen is the cases
 7   will continue moving along up to, and including, the time
 8   of filing of case dispositive motions, and then those case
 9   dispositive motions will probably sit and probably the pre-
10   trial and trial matters related to that will be cancelled.
11   Those will be dependent upon either a District Court Judge
12   on this bench deciding those motions or the new judge that
13   will be replacing Judge Jordan deciding those motions.
14                 It really doesn't make any sense, at least that
15   is the approach the court is taking at present, for me to
16   decide case dispositive motions because that essentially
17   allows a second bite at the apple and that means not only
18   myself as a judge deciding the issue but if somebody is
19   dissatisfied with my ruling, having a District Court Judge
20   then review my ruling and do a de novo review.  So at
21   present, this is how we're operating, and that might in
22   essence be dependent on how long it takes for us to get a
23   replacement for Judge Jordan.
24                 Now, I know there was a scheduling order in
25   place in this case.  Let me just see.  Did Judge Jordan --
```

```
 1   yes, he decided consolidating cases but the last thing I
 2   have noted on the docket entries was the fact that you
 3   received notification that the case was now in my bailiwick.
 4              MR. BLOOM:  Judge, this is Tom Bloom.  Case
 5   dispositive motion is pending.
 6              THE COURT:  Okay.  Is there one pending?
 7              MR. BLOOM:  Yes, we filed a motion for summary
 8   judgment.  The consolidation is just that there were two
 9   identical complaints filed, one in your court and one in
10   state court.  And we removed the state court action and
11   consolidated them.  And I would only add, Your Honor, I
12   don't know what Ms. Ford's feelings are on the matter but
13   Christiana Care would consent to jurisdiction before Your
14   Honor for purposes of disposition on the merits in the
15   interest of getting the motion decided and if it's denied,
16   just moving forward with disposition.
17              THE COURT:  Okay.
18              MR. BLOOM:  And I don't know if that works with
19   Your Honor's caseload but I just wanted to raise that.
20              THE COURT:  When you say Christiana Care, does
21   that include Richard Burton and Clara Clark?
22              MR. BLOOM:  Yes.
23              THE COURT:  So "defendants" would.
24              MR. BLOOM:  Yes.
25              THE COURT:  All right.  And I'm not asking for a
```

1  decision from you, Ms. Ford, but if the parties do agree to
2  consent to my jurisdiction, they would have to file a
3  stipulation and the stipulation would be consistent with the
4  type of indication of consent to my jurisdiction, the type
5  of order that is presently passed out at the beginning of
6  the case that comes from the Clerk's Office.  It's very
7  similar to that.  You just do a stipulation in that regard
8  and then a District Court Judge would sign-off on it.
9              MS. FORD:  Oh, okay.
10             THE COURT:  Okay?  But again, I want you to
11 understand, Ms. Ford, I want both sides to understand that
12 even if the parties do consent to my jurisdiction, there is
13 no way you are keeping the trial dates as it is now in light
14 of what has happened to my schedule.  I probably would
15 cancel the pretrial and trial dates and not reschedule them
16 until after I get the motions decided, the outstanding
17 motions decided.
18             MS. FORD:  That's fine with me, Your Honor.
19 Whatever you decide to do is fine with me.
20             THE COURT:  Well, you may not agree with that
21 comment later on, Ms. Ford.
22             MS. FORD:  Well, I mean I understand it's going
23 to be awhile because I was reading the papers that Jordan
24 did get appointed the job at the Third Circuit.  I did find
25 that out.  So whatever works for your schedule, Your Honor,

```
 1   is fine with me.  We came this long, but later on down the
 2   road, it's not even going to matter.  I'm willing to
 3   accommodate you if you are willing to accommodate me.
 4            THE COURT:  Well, I'm willing to.  And there
 5   is a couple things that I wanted to touch base with you,
 6   Ms. Ford, because I noticed that you filed a motion to
 7   compel.  I mean there has been a number of motions that I
 8   have seen come flying across my desk in this case.
 9            MS. FORD:  I planned on filing the motion today,
10   it's a motion for summary judgment.
11            THE COURT:  That's fine, that's fine, but there
12   have been two motions to compel that have been filed by you
13   that I'm aware of.
14            MS. FORD:  Yes.
15            THE COURT:  And you know what?  I may have the
16   wrong case.
17            MS. FORD:  No, you have the right one, Your
18   Honor, because I filed two for the both of them.
19            THE COURT:  Okay.
20            MS. FORD:  Not responding to the documents that
21   I've been requesting from them.  UNUM and Christiana Care,
22   they're not responding.  I asked for those documents a long
23   time ago and they're not sending them to me.  They're
24   sending me everything but what I asked for.
25            THE COURT:  Let's, just to try to cut through
```

```
 1   this, and there may be two motions that were filed in the
 2   UNUM life insurance case and one motion to compel, I
 3   believe, filed in this case, I think.
 4              MR. BLOOM:  That's my understanding, Your Honor.
 5   Just one motion in this case.
 6              THE COURT:  Yes, I saw that.  It was filed, your
 7   opposition I think was filed on December 22nd.  I'm trying
 8   to find when the motion was filed and I've gone back, trying
 9   to look at that.  In any event, what is your concern?  What
10   document, specific documents, Ms. Ford, are you looking for
11   that you're saying that Christiana Care or these defendants
12   are not providing to you?
13              MS. FORD:  Well, I asked them, Your Honor, for
14   my pension information and life insurance policy and I don't
15   have the paperwork right here but I'm sure they know which
16   documents that I need.  They have not sent that to me.
17              THE COURT:  Okay.
18              MS. FORD:  Ms. Bassenger (phonetic) did send me
19   my pension information that they terminated.  Your Honor,
20   I'd like to know why was the pension terminated.
21              THE COURT:  Okay.  That's not a document
22   request.  Do you understand there is a difference to that, a
23   document request?
24              MS. FORD:  I'm sorry?
25              THE COURT:  When you are asking for a production
```

1   of documents, you are asking for them to produce or give you
2   documents.  For example, a copy of the insurance policy or a
3   copy of what your pension information was.  If you are
4   asking why your pension was terminated, that's an
5   interrogatory.  Now, have you asked them in an interrogatory
6   form as to why your pension was terminated?
7            MS. FORD:  No, Your Honor.  If they would send
8   me all the documents for my pension, it would be on there.
9   I mean they sent me one paper which I'm going to be filing
10  with you in court and they filed it also that it was
11  terminated, the pension and retirement was terminated, and
12  they're not saying why.  Is there a certain separate motion
13  that I'm supposed to file?
14           THE COURT:  No, no.  Really, you are not
15  supposed to be filing a motion because under Judge Jordan's
16  schedule the schedule I keep, you are supposed to file no
17  more than a two or three page letter outlining what you feel
18  that you have not received from them and that's what I was
19  trying to address today, to see if we could cut through this
20  so you don't have to keep filing any more paper.
21           MS. FORD:  Well, Your Honor, I asked them for
22  the motion.  I was told to file a motion to compel, to
23  request the documents that I like to get from them.
24           THE COURT:  Okay.
25           MS. FORD:  That's the reason why two of them was

1  filed.

2              THE COURT:  Let me back up a little bit.  That

3  is what I was trying to explain to you.  When you ask for

4  documents, that is one thing.  When you were asking the

5  question why your pension was terminated, that's an

6  interrogatory.  That's not a request for production, it's a

7  different animal -- that's all I'm saying -- a different

8  discovery tool.  And are you saying that you received the

9  pension information, that is, you received documents that

10 show what your pension was earning and showing what, when it

11 was stopped and terminated?  Is that correct?

12             MS. FORD:  I received two sheets of paper from

13 them.  In fact, I want to be filing them today with the

14 court, two pieces of paper when I asked about my pension

15 that I received from them.

16             THE COURT:  Okay.  And what did that tell you?

17             MS. FORD:  The person who terminated and the

18 person who received it.

19             THE COURT:  Okay. So you got that information

20 then?

21             MS. FORD:  Well, Your Honor, I don't think two

22 sheets of piece of paper is my whole pension.  Now I'm sure

23 you know that yourself, Your Honor.  Two pieces of paper,

24 I've been working there 17 years, two pieces of paper is my

25 pension.

1          THE COURT:  Well, if it explains to you, Ms.
2   Ford, how much was in your pension at the time you ended,
3   then that gives you the information.  What other pension
4   information are you looking for?
5          MS. FORD:  Well, I'll tell you what, Your Honor.
6   I'll give you a copy of it today along with Mr. Bloom and
7   them to find out if this is what I'm supposed to get because
8   I really don't know, to be honest with you.  I asked for all
9   my information.  I didn't think it was going to be two
10  sheets of paper.
11         MR. BLOOM:  I'll just add, Your Honor, what
12  Ms. Ford is referring to I think has already been filed
13  twice, once by each side, but I just wanted to note that.
14  Ms. Ford filed the document she is referring to with her
15  motion to compel, I believe, and we filed it with our
16  summary judgment motion and it's the document that sets
17  forth Ms. Ford's pension.  It wasn't terminated, per se,
18  it's vested and payments will begin when she reaches
19  retirement age and the document she received sets forth the
20  date payments will start and what the amount is and what the
21  status of her pension rights are and that is what we
22  produced.
23         THE COURT:  Okay.  What about the life insurance
24  policy?  I know that in both cases, she has made the request
25  for that.

1           MR. BLOOM:  I have to go back and check.  We
2    produced all the benefits information that we have.  And my
3    understanding, and Ms. Ford will correct me, I'm sure, if
4    I'm wrong, but she was sent information at the time of her
5    termination and we produced it again in this lawsuit about
6    converting any line insurance that she had at the end of her
7    employment and she elected not to do that.
8           THE COURT:  I think she is actually looking for
9    a copy of the life insurance policy.  And was this life
10   insurance policy a life insurance policy she would have had
11   with UNUM or would it have been Christiana had it and she
12   would have been paying into it?  Do you understand the
13   difference, what I'm trying to say?
14          MR. BLOOM:  Yes, she was not paying into it.
15          THE COURT:  Okay.
16          MR. BLOOM:  And I have not looked at the file
17   recently.  I mean I know when we got -- there was some back
18   and forth with another associate here at Morgan Lewis and
19   Ms. Ford and I think we did our best to gather up everything
20   she wanted.  I'll have to check on the line insurance policy
21   but since it's something she specifically requested, I'm
22   fairly confident that we tracked it down and turned it over.
23          THE COURT:  Okay.  And is there anything else
24   that you are looking for, Ms. Ford, that is a document -- do
25   you understand what I'm saying? -- different from the whys,

1  which you probably have to ask a person, but is a document
2  you are looking for?
3              MS. FORD:  Your Honor, like I said, I don't have
4  the motion to compel in front of me but I'll have to get it
5  to Your Honor to find out which ones they are because I
6  requested the reason.  You said there is a separate motion
7  that you have to file as to why it was terminated.
8              THE COURT:  No, no.  Listen to me.  You have to
9  ask a separate question as to why it was terminated.  What
10 I'm looking for when you show me your motion to compel, you
11 are saying please provide the $75,000 life insurance policy,
12 please provide the long term insurance benefit contract.  To
13 the extent that they have provided you documents that
14 represent those, then I would have to sit there and say they
15 met what you asked.  If you want to know why it was
16 terminated, then you ask that question and that is called an
17 interrogatory, okay?
18             MS. FORD:  Okay.
19             THE COURT:  That's what I'm saying the
20 difference is because what I'm looking at when you made the
21 document request, you asked for the documents.  If they
22 produced the documents or whatever they had that would be
23 evidence of those documents, then they may have met their
24 burden of what they're supposed to do.
25             MS. FORD:  Well, I don't think they have done

```
 1   that.
 2            THE COURT:  Okay.
 3            MS. FORD:  They have not done that.
 4            THE COURT:  That may be so, but if you are
 5   saying you want to know the why of something, I'm just
 6   trying to explain to you, Ms. Ford, then you've just got to
 7   do and interrogatory that asks why was it terminated, why
 8   was this, that type of thing.  That's all I'm saying.
 9            MS. FORD:  Thank you, Your Honor.
10            THE COURT:  That's all I'm trying to do in
11   helping you on that point.  That's all.
12            MS. FORD:  Thank you.
13            THE COURT:  If the parties are going to consent
14   to my jurisdiction, then I would ask that a stipulation be
15   filed with the court with no later than next Wednesday.
16   That helps me so that I know what caseload I'm going to have
17   to be directly responsible for.
18            I think it's fairly fair to say that even if you
19   don't consent to my jurisdiction, whether you do or you
20   don't, I don't see how the trial, the pretrial or trial
21   conference could go on in this case just because it's going
22   to be happening in the June or July time frame and if you
23   don't consent, I don't see the summary judgment motion or
24   the case dispositive motions being decided by anybody else
25   by that time and I sincerely doubt I will have them decided
```

1  by that time in any event, so I wanted you to understand
2  that before you filed any stipulations.
3           Stipulations should just be straightforward.  I
4  have mediated the UNUM Life Insurance case and I didn't know
5  if the parties wanted me to be involved, if they wanted to
6  be involved in mediation or just wanted me to serve as a
7  trial judge.
8           MR. BLOOM:  Your Honor, this is Tom Bloom.  I
9  think you know we have had some initial discussions with
10 Ms. Ford at the beginning of this case about whether it
11 could be resolved.  And my sense, from my conversation with
12 her many months ago, is that it can't.
13          THE COURT:  Okay.
14          MR. BLOOM:  And so, I mean we're not -- we're
15 open to it if Ms. Ford wants to pursue it and Your Honor
16 does, but we'd just as soon the Court decide the dispositive
17 motion.
18          THE COURT:  All right.  Why don't we just leave
19 that issue completely open then and maybe we'll address it
20 later on.  But obviously before I can decide any dispositive
21 motions, I will need the parties consent, if that is what
22 they want to do, to my jurisdiction and then you will need
23 to file the stipulation.  So I'm hoping that if I schedule
24 it, say, get it filed by March 14th, is that a realistic
25 possibility?  I don't want to make it so short that you

1   can't get it done.
2           MR. BLOOM:  I think so.  The only thing is in
3   the past, we have filed stipulations in the past and we had
4   to use regular mail with Ms. Ford so it may take a few days
5   extra.
6           THE COURT:  Okay.  Why don't we make it Friday,
7   March 16th to get it in by.
8           MR. BLOOM:  Okay.
9           THE COURT:  Okay?
10          MR. BLOOM:  And I would add, having reviewed the
11  file a little bit, the life insurance documents Ms. Ford
12  requested, we actually served, it's a life insurance policy
13  carried by UNUM, we served a subpoena on them, they produced
14  their file, and we turned it over to Ms. Ford.
15          THE COURT:  Okay.  So you didn't have the life
16  insurance policy in Christiana's possession?
17          MR. BLOOM:  Right.
18          THE COURT:  All right.  Ms. Ford, check and see
19  if there is anything that remotely looks like that.
20          MS. FORD:  Your Honor, they had been sending me
21  information.  What they sending me considered as the policy
22  doesn't have my name on it.  I think I filed that with the
23  Court.  They don't have my name on the policy.  All the
24  information as if you wanted to buy a policy with them.
25  That's what I have here.

1           THE COURT:  Okay.  But you are working from the
2  assumption you had a life insurance policy with UNUM; right?
3           MS. FORD:  I had a life insurance policy with
4  Christiana Care.  Christiana Care had it with UNUM.  That is
5  who was taking the money off out of my check to pay.
6           THE COURT:  Okay.
7           MS. FORD:  I didn't directly pay UNUM myself.
8  Christiana Care paid for it.  They took money out of my
9  check to pay for my insurance policy for 17 years.  I don't
10 know if it was for the whole 17 years but it was while I was
11 working there.
12          THE COURT:  Okay. I understand. All right.
13 Well, let's see what we can do as far as this case is
14 concerned.  If Christiana Care does not have custody and
15 control of the policy, it may be more of an issue with UNUM
16 than it may be with Christiana Care.
17          MS. FORD:  You're right, Your Honor.  I've been
18 trying to get it out of them as well.
19          THE COURT:  Yes, I know.
20          MS. FORD:  It's like -- never mind.
21          THE COURT:  All right.
22          MS. FORD:  It's bad, that's all I know.  It's
23 very bad.
24          THE COURT:  I understand.  Okay.  We'll move
25 forward on this case and I'll have a better idea of what to

1   do once I get the stipulation.  All right?
2           MS. FORD:  Thank you.
3           THE COURT:  Thank you very much.
4           MR. BLOOM:  Thank you.
5           THE COURT:  If you can't consent to my
6   jurisdiction, just send a letter to the Court indicating the
7   parties were unable to consent so I know, one way or the
8   other.
9           MR. BLOOM:  We will, Your Honor.
10          THE COURT:  Okay.  Thank you very much.
11          MR. BLOOM:  Thank you, Your Honor.
12          THE COURT:  Take care now.  Good-bye.
13          (Telephone conference ends at 9:22 a.m.)
14
15
16
17
18
19
20
21
22
23
24
25