1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                              - - -

STEPHANIE LYNN FORD,

4                                   :      CIVIL ACTION
            Plaintiff,             :

5                                   :
        v                          :

6                                   :
UNUM LIFE INSURANCE                 :

7    COMPANY OF AMERICA,            :
                                    :      NO. 05-118 (***)

8          Defendant.
     -------------------------------

9    STEPHANIE LYNN FORD,
                                    :

10           Plaintiff,             :
                                    :

11       v                          :
                                    :

12   CHRISTIANA CARE HEALTH SYSTEMS, :
     MR. RICHARD BURTON, and        :

13   MRS. CLARA CLARK,              :
                                    :      NO. 06-301 (MPT)

14          Defendants.

15                             - - -

16                       Wilmington, Delaware
                    Friday, June 29, 2007 at 9:00 a.m.

17                    *TELEPHONE CONFERENCE*

18                             - - -

19   BEFORE:   HONORABLE **MARY PAT THYNGE**, U.S. MAGISTRATE JUDGE

20                             - - -

     APPEARANCES:

21

22          STEPHANIE LYNN FORD

23               Pro Se Plaintiff

24
                         Brian P. Gaffigan

25                       Registered Merit Reporter

1    APPEARANCES:  (Continued)

2

3                MORRIS JAMES, LLP
             BY:  JAMES H. McMACKIN, III, ESQ.

4                    and

5            MORGAN LEWIS & BOCKIUS
             BY:  THOMAS S. BLOOM, ESQ.

6                  (Philadelphia, Pennsylvania)

7                    Counsel for Defendants in 06-301

8

9            STEVENS & LEE
             BY:  WALTER P. McEVILLY, JR., ESQ.

10                   and

11           STEVENS & LEE
             BY:  KIRK L. WOLGEMUTH, ESQ.

12                 (Reading, Pennsylvania)

13                   Counsel for Defendant in 05-118

14

15

16

17

18

19

20

21

22                   - oOo -

23              P R O C E E D I N G S

24        (REPORTER'S NOTE:  The following telephone

25   conference was held in chambers, beginning at 9:00 a.m.)

1          THE COURT:  Good morning.  This is Judge Thynge.

2          MR. McEVILLY:  Good morning, Your Honor.  This

3     is Walt McEvilly.

4          THE COURT:  Before we begin, I want to make sure

5     everybody is on the line.

6          Ms. Ford, are you on the line?

7          MS. FORD:  Yes, Your Honor.

8          THE COURT:  Okay.  How about what I will call

9     the Christiana Care defendants?  Who is on the line for

10    them, please?

11         MR. BLOOM:  Tom Bloom from Morgan Lewis in

12    Philadelphia.

13         MR. McMACKIN:  And, Your Honor, this is Jim

14    McMackin at Morris James in Wilmington, local counsel for

15    Christiana Care.

16         THE COURT:  All right.  And on behalf of UNUM?

17         MR. WOLGEMUTH:  Kirk Wolgemuth.

18         MR. McEVILLY:  And Walt McEvilly.

19         THE COURT:  All right.  Counsel, there was an

20    error on the order that I sent out to you.  My understanding

21    is the only case that I have that the parties have consented

22    to my jurisdiction are the Christiana Care Healthcare

23    Systems.  I do not believe there has been an affidavit or I

24    should say a stipulation to consent to my jurisdiction in

25    the UNUM case so to the extent MPT initials were associated

1    with the 05-118 case, MPT should be replaced with three

2    stars behind it and that is still in the Vacant Judgeship.

3                The purpose of this call today is because the

4    plaintiff, Ms. Ford has filed a request for an extension for

5    discovery in this case.  And I know that we have visited

6    this issue a couple of times, because Ms. Ford feels that

7    she is not received the documents that she wants to receive,

8    and I'm just trying to get to the bottom of this to find out

9    if there is anything out there that has not been produced,

10   because I know that we've had a number of teleconference

11   regarding this, and I just want to confirm, there are two

12   different requests or similar requests because one of them

13   deals with the pension benefits which seem to be directed

14   more so to Christiana and the other one deals with documents

15   for long term disability benefits, the life insurance

16   policy, personnel accident insurance, that type of stuff.

17   So there are four document requests from what I can tell

18   directed to UNUM and there are six document requests that I

19   can tell that are directed to the Christiana Care

20   defendants.

21                MR. WOLGEMUTH:  Your Honor?

22                THE COURT:  Yes.

23                MR. WOLGEMUTH:  If you would like me to begin?

24   This is Kirk Wolgemuth.  The disability policy was attached

25   to our motion for judgment which was granted.  The life

1    insurance policy is also attached to the motion for summary

2    judgment that I filed.  I think the problem here is that --

3              THE COURT:  The life insurance policy was also

4    attached?

5              MR. WOLGEMUTH:  Yes.  It's a group life

6    insurance policy, Your Honor.  I think that is the problem

7    is that Ms. Ford doesn't understand that there would not be

8    an individual policy issued to her.  It's a group policy

9    that covers all the employees.

10             THE COURT:  All right.  Are there any other

11   documents that have been addressed towards UNUM in the six

12   requests that she made?  Because I think for the UNUM one,

13   it was also long term disability benefits.

14             MR. WOLGEMUTH:  Right, and that policy was also

15   given to her.  Well, it's part of the claim file and as part

16   of our motion for summary judgment.  Again, it's a group

17   policy, Your Honor, not an individual policy.

18             THE COURT:  The other question was she also asks

19   the reason why the benefits were terminated.  Had that

20   answer been provided?

21             MR. WOLGEMUTH:  Well, yes, inasmuch as all that

22   was explained in our motion for summary judgment which was

23   granted.

24             MR. BLOOM:  And, Your Honor, this is Tom --

25             THE COURT:  Wait.  Before the next person talks.

1          MR. BLOOM:  All right.

2          THE COURT:  Was that granted by Judge Jordan?

3          MR. WOLGEMUTH:  Yes.

4          THE COURT:  Is there anything left of the case?

5          MR. WOLGEMUTH:  The only thing that is left,

6   Your Honor, when I filed my initial motion for summary

7   judgment, I didn't realize that an issue out there was the

8   issue of life insurance.  And Judge Jordan, in his order,

9   noted that was an issue that wasn't addressed in our motion.

10  So I filed a second motion for summary judgment to cover the

11  issue of the life insurance, and then that is pending.

12         THE COURT:  Would you be willing to provide

13  a cert?  Because although they're attached to the motions

14  for summary judgment, Kirk, I think your client needs, since

15  it's a document request, a certification be filed with the

16  court saying these are the only documents that are available

17  and just put it in affidavit form that these are group

18  policy plans, there would be no individual policy naming

19  her.  These are group policy plans and there would be no

20  individual policy issued.

21         MR. WOLGEMUTH:  Certainly, I can do that.

22         THE COURT:  I think that would be appropriate

23  because then it would clean up, it will clean up a

24  combination of the discovery and what is out there for

25  the purposes of summary judgment, too.

1          MR. WOLGEMUTH:  I can do that, Your Honor.  I

2    think when I filed the summary judgment, there was probably

3    an affidavit saying this is the group policy but it didn't

4    cover the issue that there was no individual policy.

5          THE COURT:  I think it would be a good idea.

6    She is also asking for personal accident insurance, I think,

7    from you, too.

8          MR. WOLGEMUTH:  Your Honor, I'll have to take a

9    look at the policy.  The life insurance policy might have

10   accidental death and dismemberment coverage within that

11   policy, but I'll look at that also.

12         THE COURT:  Now, I've addressed and talked with

13   UNUM.  My understanding is that, Tom, you wanted to explain

14   to me about Christiana; is that correct?

15         MR. BLOOM:  Yes.  Very briefly, Your Honor.

16         We responded to plaintiff's discovery requests.

17   We produced everything that we've got.  We also issued

18   subpoenas to various providers of benefits, including UNUM

19   and the provider of the pension plan.  And when we obtained

20   those documents, we produced all of it to Ms. Ford.  We have

21   nothing left that is relevant to the case at all.  And to

22   the extent that we, Christiana Care, possessed any relevant

23   documents regarding benefits, we produced them.  And then

24   we also obtained, frankly, most of the documents from third

25   parties and produced them as soon as we got them.

1          THE COURT:  So have you produced all documents

2     that you have regarding her pension benefits and her retiree

3     benefits?

4          MR. BLOOM:  Yes.

5          THE COURT:  Do you know when those were

6     produced?

7          MR. BLOOM:  I mean, gees, it's got to be like

8     nine months ago, well before summary judgment motions.

9          THE COURT:  And the life insurance policy, did

10    you also produce that?  Because she said there is a copy of

11    the life insurance policy.

12         MR. BLOOM:  Yes, we did.  I'm just looking at

13    our response.  We filed a response back in December of 2006

14    when Ms. Ford filed a motion to compel and, yes, we produced

15    everything relating to the life insurance policy that we had

16    or obtained from a third-party.

17         THE COURT:  Let's try to find out.  There were

18    six document requests plus document seven which is really I

19    view as an interrogatory.  The reason why plaintiff was

20    denied 29 jobs at Christiana Healthcare Systems, I view that

21    more as an interrogatory.  But the latest document request

22    attached to her motion for extension of the discovery cutoff

23    deadline in an attempt to obtain the necessary documents,

24    which is docket entry number 70, one through six, I need to

25    know, Tom, when you actually produced these documents.  Now,

1    you said to me that some were produced in December 2006.

2    Are you saying that all these documents were produced in

3    December 2006?

4              MR. BLOOM:  No, Your Honor.  They were all

5    produced well before December 2006.  December 2006 is when

6    we responded to plaintiff's motion to compel in which we

7    represented to the Court that all the documents had already

8    been produced during the discovery period.

9              THE COURT:  Ms. Ford -- and then did you ever --

10   I guess you haven't answered what is listed as document

11   number seven as the reason that plaintiff was denied 29

12   jobs at Christiana Care Health Systems or has any such

13   interrogatory been posed to you before?

14             MS. FORD:  Do you want me to answer the

15   question?

16             THE COURT:  No, no.  I'm asking the question of

17   Mr. Bloom.  I'm sorry, Ms. Ford.

18             MR. BLOOM:  I'm sorry, Your Honor.  The question

19   is?

20             THE COURT:  Document number 7, if you look at

21   the latest thing that Ms. Ford filed, which was, as I said,

22   was docket entry number 70, it is attached to her motion for

23   extension of discovery cutoff deadline in an attempt to

24   obtain the necessary documents.  Document number 7 is please

25   produce the reason plaintiff was denied 29 jobs at

1    Christiana Care Health Systems.

2              MR. BLOOM:  You know, I don't know that we have

3    a document.  I don't believe we actually have a responsive

4    document.

5              THE COURT:  Well, and I agree with you.  I'm

6    viewing it more as an interrogatory, recognizing we're

7    dealing with a pro se individual here.

8              MR. BLOOM:  Yes.  I think during the discovery

9    period we didn't, to my knowledge, receive any discovery

10   request relating to any specific job.  And Ms. Ford's claim

11   at the time related to the termination of her employment and

12   the termination of benefits which was really just a natural

13   consequence of the end of her employment.  We produced all

14   the documents from Ms. Ford's personnel file and, frankly,

15   never got into specific job applications for any positions

16   that Ms. Ford filed.  During the case, she didn't request

17   that sort of information.  And as it was set forth in our

18   summary judgment motion, her employment ended because she

19   just exhausted FMLA leave, an additional 12 weeks of leave

20   that Christiana Care provided.

21             THE COURT:  All right.  Ms. Ford, you responded

22   to their respective motions for summary judgment filed by

23   UNUM and the Christiana Care defendants.

24             MS. FORD:  Yes, Your Honor, I did.

25             THE COURT:  What I have -- and this is what

1  we've talked about before.  The representations that are

2  being made is that you received all the documents that they

3  have, including documents from third parties.  That you

4  don't have an individual life insurance policy.  It's a

5  group life policy.  That you don't have individual

6  disability.  In other words, a policy not with your name on

7  it.  As an employee, you would receive that benefit.  So I

8  have no place to go to get you any more documents.  That's

9  my concern.  And I tried to explain this to you before.

10          MS. FORD:  Okay, Your Honor.  I just wanted to

11  ask, is a court reporter present on this telephone?

12          THE COURT:  Yes.

13          MS. FORD:  Good.  Can I just say something?

14          THE COURT:  Sure.

15          MS. FORD:  Could you tell me when can this case

16  be taken to the Third Circuit?

17          THE COURT:  It can't be taken until I decide the

18  motion.  Now, understand, Ms. Ford --

19          MS. FORD:  Both cases?

20          THE COURT:  Wait a minute.  Judge Jordan

21  decided one motion for summary judgment and got rid of a

22  good percentage of the case.  That is the UNUM case.  There

23  is another outstanding motion for summary judgment in the

24  UNUM case.  And once that motion is decided -- and I will

25  not be the one deciding it because you and UNUM have not

1    consented to my jurisdiction in that case.

2            The Christiana Care case, once the motion for

3    summary judgment is decided, and if the motion that is filed

4    by the Christiana Care defendants is granted; and that, I

5    will be deciding; then you have the right to take an appeal

6    to the Third Circuit.  And certainly when I issue any order

7    in that case, if that is what happens, I will tell you that

8    you have that right to take an appeal.  Okay?

9            MS. FORD:  Yes.

10           THE COURT:  So that time period has not started

11   to run on you so you don't have to worry about that.

12           On the Ford vs. UNUM case, because there is

13   still part of this case alive, I don't think the time period

14   started running.  It's not going to run because there is no

15   judge assigned to this case to decide it unless the parties

16   consent to my jurisdiction.

17           Now, if we get a new District Court Judge some

18   time in the near future, and I don't know when that is going

19   to happen, then that District Court Judge will take up the

20   Ford vs. UNUM matter and what is left over as far as that

21   is concerned.  And then once that judge decides that motion

22   for summary judgment, and if it goes against you, you then

23   have a right to take an appeal to the Third Circuit.

24           MS. FORD:  My other question, Your Honor.

25           THE COURT:  Sure.

1          MS. FORD:  Do you have copies of the life

2    insurance policy or any of the documents that I requested?

3          THE COURT:  We probably do some place in the

4    file but I haven't gone through the file to find out.  I

5    don't know for sure if defendants, when they responded to

6    your document requests, also provide the court with the

7    documents or if they just send us a notice.

8          MS. FORD:  Are they supposed to?

9          THE COURT:  No, they don't automatically have

10   to, no.  Because, otherwise, can you imagine what our files

11   would look after awhile?  They'd be huge.  They don't have

12   to do that, to necessarily provide us with copies of the

13   documents that they provide to you.

14         The only other thing I can do is just say to

15   counsel whatever you produced before, produce it again,

16   because I don't know what else to do at this stage.

17         MR. WOLGEMUTH:  Your Honor, this is Kirk

18   Wolgemuth.  I think UNUM would be willing to consent to your

19   jurisdiction to decide this remaining issue if Ms. Ford

20   would agree.

21         MS. FORD:  To answer your question, I don't

22   really want to agree on too much of anything because I'm not

23   an attorney.  It seems like when I agree on things, it's to

24   you guys' benefit and not to mine.  So at this point, I

25   guess I should say I want to plead the Fifth because I

1    really don't know.

2                    THE COURT:  Okay.  I understand that, Ms. Ford.

3    All I'm telling you is that I'm not certain how soon I'm

4    going to get to the motions in any event, but until there is

5    a District Court Judge that takes over the Ford vs. UNUM

6    case, I know that the motion for summary judgment that is

7    outstanding will not be decided.

8                    MS. FORD:  Okay, Your Honor.

9                    THE COURT:  I can't decide it at this stage.

10   That's all I'm just telling you.

11                   MS. FORD:  Okay.

12                   THE COURT:  But that's all I want you to know.

13   I'm not trying to force you into anything.  What has been

14   said to me, though, Ms. Ford, particularly in the UNUM

15   matter, is that it's claimed by defense counsel that when

16   they filed their motions for summary judgment, the first

17   one that Judge Jordan decided, attached to the exhibit,

18   they're claiming, were copies of these various documents

19   that you requested.  And also I guess in the latest round of

20   the motion, the last motion for summary judgment that UNUM

21   filed, they're claiming additional documents were provided.

22   I don't know whether there is exhibit numbers that could

23   address, they could direct you to look at.

24                   MS. FORD:  Your Honor, to be honest with you,

25   they did direct me to those.  They did have exhibits, but

1    on those exhibits, what they consider as my life insurance

2    policy, it did not have my name on it.

3            THE COURT:  That's what I'm trying to say to

4    you, Ms. Ford.  If it's a group policy, it would not have

5    your name on it.

6            MS. FORD:  Well, it doesn't have any other

7    information that pertains to me on it.  It's their

8    information as if though you want to purchase a policy.  So

9    to make it fair, I would think they would give you a copy of

10   it so you can see just what I'm seeing.  That way, there

11   won't be any miscommunication on what they are giving.

12   Because this is, they shouldn't waste your time and my time,

13   to give information that is not what I want or what they

14   consider was supposed to be the facts.

15           THE COURT:  Well, there was attached to their

16   brief a group life policy.  It was attached to their brief

17   that was filed on December 29th, 2006, a group insurance

18   summary of benefits nonparticipating, and there was a copy

19   of what the summary of the benefits were, the employer

20   provision, who makes the payment, that type of information.

21   And that was a document that looks like it was fairly

22   substantial.

23           MS. FORD:  Is that what you are reading from at

24   this time?

25           THE COURT:  Yes, yes.  I'm looking at that.  And

```
 1    I can't, unfortunately --

 2              MS. FORD:  Does that look like a policy from

 3    their standpoint at this time?

 4              THE COURT:  It's a summary of benefits, which is

 5    what is required under ERISA.

 6              MS. FORD:  Okay.

 7              THE COURT:  And I don't know.  Is this

 8    considered -- and I'll direct that question to you, Kirk --

 9    is this the group life policy?

10              MR. WOLGEMUTH:  Yes, Your Honor.

11              THE COURT:  It is?

12              MR. WOLGEMUTH:  Yes.

13              THE COURT:  It says here UNUM Life Insurance

14    Company of America insures the lives of Christiana Care

15    Health Systems Inc. under select group insurance trust

16    policy, and it says the number.  And then it goes on to say,

17    UNUM Life Insurance Company of America (referred to as UNUM)

18    will provide benefits under the summary of benefits.  UNUM

19    makes this promise subject to all of this summary of

20    benefits provision.

21              And it is made to the employer because the

22    employer gets it for the benefit of its employee.  So it

23    wouldn't be a policy that would have your name on it.

24              MS. FORD:  Well, Your Honor, could they send me

25    a copy so when we go to the Third Circuit, I can have this?
```

1                    THE COURT:  Well, it's attached to -- do you

2       have their answering brief in opposition to your second

3       motion to compel production of documents?

4                    MS. FORD:  Well, I have the order that you

5       denied the motion to compel.  I have a copy of the motion to

6       compel that I filed.

7                    THE COURT:  Do you have a copy of their answer,

8       UNUM's answering brief in opposition to your second motion

9       to compel?

10                    MS. FORD:  I believe so, Your Honor.  Yes.

11                    THE COURT:  If you do, then it is attached to

12      that, Ms. Ford, because I'm looking right at it.

13                    MS. FORD:  Okay.  Fine.

14                    THE COURT:  It is a thick document.  It has

15      ERISA, and then it has, at the bottom of the page, life

16      benefits.

17                    MS. FORD:  Okay.

18                    THE COURT:  Employee one, two and three.  And

19      then there is a couple other pages that.

20                    MS. FORD:  Okay.

21                    THE COURT:  That's what I would be looking at.

22                    MS. FORD:  Okay.

23                    THE COURT:  Okay?

24                    MS. FORD:  Yes.

25                    THE COURT:  Now, would it be helpful to you if

1    Christiana told you when they provided these documents to

2    you?

3              MS. FORD:  It doesn't matter to me, Your Honor.

4              THE COURT:  Well, no, it should matter to you.

5    The only other thing, as I said, I could say is to require

6    them to produce those documents that they produced

7    previously again.

8              MS. FORD:  Okay.

9              THE COURT:  And that's the only other thing I

10    can do, just to make sure that everything is together.

11              MS. FORD:  Okay.

12              THE COURT:  Let me tell you that there were

13    other copies provided by UNUM on UNUM's motion for summary

14    judgment that was filed in January of 2007.  And then

15    there was another copy provided on their opening brief in

16    opposition to your motion to compel production of documents.

17    UNUM provided that on December 15th, 2006.  Same document.

18              But I'm going to require Christiana Care to re-

19    produce in one package all the documents that they produced

20    previously.  And I know that, Tom, that may be somewhat

21    burdensome but it's the only way.  And then I want you to

22    provide me a copy of it as well.

23              MR. BLOOM:  No problem.

24              THE COURT:  Okay?  How long, Tom, do you think

25    it's going to take for you to be able to produce those

1   documents and get them together?

2          MR. BLOOM:  I think if we needed to reproduce

3   the entire production in the Ford case, we could do that

4   within a matter of days.

5          THE COURT:  All right.  Why don't we do this?

6   Why don't you get it to her by July 9th?

7          MR. BLOOM:  And a copy of the production to you,

8   Your Honor?

9          THE COURT:  Yes, please.  So if we have this

10  issue come up again, I at least have one source I can go to

11  to look for them all.  And I would appreciate if they would

12  be Bates numbered.

13         MR. BLOOM:  I believe they are.

14         THE COURT:  Okay.

15         And that's what I can do, Ms. Ford, so that you

16  do have.  You do have that amount extension to be able to

17  get that information, that is, what you have requested in

18  documents one through six against Christiana.  Document

19  number seven is really an interrogatory.  And I need some

20  help from you, Ms. Ford.  What are you looking for in

21  document number seven that you just filed recently so I can

22  understand it better.

23         MS. FORD:  Why was I refused these jobs?  I mean

24  they say I lost my remedy as far as the FMLA.  That is not

25  true.  I came back to work to get a job and I was refused

1    the work there.  They refused to give me a job.

2              THE COURT:  So when was the timing of when you

3    came back to work that you are claiming that they refused to

4    give you a job?

5              MS. FORD:  I came back to work April 19th.

6              THE COURT:  What year?

7              MS. FORD:  2004.

8              THE COURT:  2004?

9              MS. FORD:  Yes.

10             THE COURT:  So you are basing it from that point

11   on or at that point when they refused to give you a job?

12             MS. FORD:  Yes.

13             THE COURT:  So you want to know why, that on

14   April 19th, 2004, when you came back to work, why they did

15   not give you a job?

16             MS. FORD:  Of the 29 that I applied for, yes,

17   Your Honor.

18             THE COURT:  Okay.  Of the 29.  Do you know, did

19   you provide them with identification of what 29 jobs you are

20   talking about?

21             MS. FORD:  Yes, also with the court as well.

22             THE COURT:  Do you know when you did that?

23             MS. FORD:  I can't remember the dates but it was

24   thereafter.

25             THE COURT:  Now, wait a minute.  Hold on.  Hold

1  on for one moment.  Do you know when you provided -- no,

2  we didn't have a mediation in this case, did we?  We had a

3  mediation in the UNUM case.  Do you know in what document

4  you filed with the court that you identified the 29 jobs

5  that you applied for that you are saying that they refused

6  to give to you?

7              MS. FORD:  Most of these documents, Your Honor,

8  I filed with the court.  Of the 29 jobs, I attached them

9  with my motion, all the jobs I filed for.

10             THE COURT:  With which motion?

11             MS. FORD:  A lot of them.  A lot of them.

12             THE COURT:  Yes, I know that.

13             MS. FORD:  The majority of them.

14             THE COURT:  Yes, I know that the latest motion

15  does not have that attachment.

16             MS. FORD:  It's included a lot of them,

17  including the summary judgment, the interrogatories.

18             THE COURT:  Are you talking about the summary

19  judgment with Christiana --

20             MS. FORD:  Yes.

21             THE COURT:  -- or the summary judgment with --

22  okay.

23             MS. FORD:  I think it was with both of them.

24             THE COURT:  Okay.  But Tom wouldn't get served

25  with the summary judgment motion that you had with UNUM.

1    But you think that you attached it to the answering brief

2    in response to the summary judgment that was filed by

3    Christiana?

4                   MS. FORD:  Yes.

5                   THE COURT:  Okay.  Tom, you need to answer that

6    interrogatory as best you can.

7                   MR. BLOOM:  Okay.

8                   THE COURT:  All right?  Now, I don't expect you

9    to answer it by July 9th because I do think you can get the

10   documents in.  How much time do you think you are going to

11   need to respond to that document number 7 that we're viewing

12   as an interrogatory as to why she applied for 29 jobs at

13   Christiana Care Health Systems and why she didn't get any

14   of those jobs as of the April 19th, 2004 time period and

15   thereafter?

16                  MR. BLOOM:  Well, I guess it depends.  My

17   understanding, Your Honor, is that -- boy, I think a lot of

18   the job applications that Ms. Ford filed I mean were just

19   over the Internet and they just never proceeded beyond that

20   point.

21                  THE COURT:  Well, I'm not asking you to answer

22   it now.  You can answer that in the response to that.  I'm

23   just going to sit there and say to you, are you going to

24   need 30 days to do the response?

25                  MR. BLOOM:  Yes, probably.

1        THE COURT:  All right.  So you will have the 30

2    days from today's date to do the response, so that could be

3    the end of July to respond to that document number 7 which

4    we talked about today which is actually an interrogatory.

5        MR. BLOOM:  Okay.

6        THE COURT:  Okay?

7        MR. BLOOM:  Yes.

8        THE COURT:  So that July 9th, you will get in

9    the documents in one package; and by July 29th, around that

10   time period, you will get the response to the interrogatory.

11   Okay?  And all they have to do, Ms. Ford, is respond to the

12   interrogatory.  You may not agree with the response, which

13   is fine.  That is what makes up a case.  And that will give

14   you the information hopefully that you need or to supplement

15   what they provided previously.

16        MS. FORD:  Okay, Your Honor.

17        THE COURT:  Okay?

18        MS. FORD:  Yes.

19        THE COURT:  So we'll work at it that way and

20   then we'll just proceed on in this case as best we can.  I

21   will address that motions in the order in which they've

22   come.  Well, we'll address the Ford vs. Christiana Care case

23   motion for summary judgment in the order in which I've been

24   trying to address the other motions for summary judgment

25   that I have in other cases and that is basically according

1    to the date of filing.

2              MS. FORD:  Okay.

3              THE COURT:  This is one of quite a few, but I

4    will get to it as soon as we possibly can so that you can

5    address that issue and do what you feel you need to do,

6    Ms. Ford, depending upon the outcome of that motion.

7              MS. FORD:  Okay, Your Honor.  Appreciate it.

8              THE COURT:  I'll try my best.  That's all I can

9    promise to you, Ms. Ford.

10              MS. FORD:  No, I understand, Your Honor.  I'd

11    like to get this case resolved.  I don't understand why

12    these guys would not want to do the same thing.

13              THE COURT:  Well, I think there is an interest

14    to do that.  I think that maybe to some extent the parties

15    have talked at cross purposes and that's why I tried to

16    have the teleconferences, to see if we can resolve the

17    differences.

18              Counsel, do you understand?  I mean, I guess,

19    Mr. Bloom, you are the only one that got hit with something

20    to do.  So do you understand what your responsibilities are?

21              MR. BLOOM:  Yes.  We're going to reproduce our

22    entire production with a copy of the production to the

23    court.

24              THE COURT:  Yes.

25              MR. BLOOM:  And we'll respond to document

1    request number 7 in the form of an interrogatory response

2    just setting forth the response.

3                    THE COURT:  Yes, the basis of the why.

4                    MR. BLOOM:  Yes.

5                    THE COURT:  And that means that the UNUM case

6    right now is just going to sit there for awhile from what I

7    can tell.

8                    MR. WOLGEMUTH:  Your Honor, this is Kirk

9    Wolgemuth.  Do I need to file any formal response to these

10   motions that Ms. Ford filed?

11                   THE COURT:  No, because we've resolved.  The

12   motions for extension of discovery deadline?

13                   MR. WOLGEMUTH:  Yes.

14                   THE COURT:  That's the only one I'm aware of.

15                   MR. WOLGEMUTH:  There is two.  I guess they're

16   both the same thing, though.

17                   THE COURT:  Were there two in the UNUM case?  I

18   thought there was one in UNUM and one in Christiana.

19                   THE DEPUTY CLERK:  There is two in each.

20                   THE COURT:  Oh, there is two in each case?

21                   MR. WOLGEMUTH:  One was filed on June 22nd, one

22   was filed in June 27th.  They're both basically asking for

23   extension of discovery and the right to obtain the documents

24   that were previously provided, basically.

25                   THE COURT:  My position is that as far as

1    those two motions that were filed, June 22nd and June 27th,

2    in both cases, I have answered today pursuant to our

3    teleconference.

4            MR. WOLGEMUTH:  Okay.

5            THE COURT:  You don't have to file a formal

6    response.  We have directed Ms. Ford to where she can find

7    the documents for you, for UNUM.  And we're resolving the

8    other issue for Christiana because their's is not as

9    centralized as yours and I just want to get a centralized

10   document.  If you want a centralized document, you can

11   file something, but my understanding is yours are more

12   centralized than Christiana's were.

13           MR. WOLGEMUTH:  That's fine.  Thank you.

14           THE COURT:  And Christiana doesn't have to file

15   a response.  It's been the two motions that Ms. Ford filed

16   in each of the cases for extension of a discovery cutoff

17   deadline.  In essence, it was granted in the Christiana

18   case, and she was directed in the UNUM case where to be able

19   to find the documents.

20           MR. WOLGEMUTH:  Okay.

21           THE COURT:  I'm going to issue an order today,

22   Ms. Ford, that basically says what I've told you during this

23   teleconference is what my order is going to be.  Okay?

24           MS. FORD:  Yes.

25           THE COURT:  All right.  Are there any other

1    questions or concerns?  If we don't have any, then I wish

2    all of you to have a very nice weekend and have a good and

3    safe Fourth of July.

4                    MS. FORD:  Thank you, Your Honor.

5                    (The attorneys respond, "Thank you, Your

6    Honor.")

7                    THE COURT:  Thank you.  Take care now.

8    Good-bye.

9                    (Telephone conference ends at 9:31 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25